The next case on our docket is Teodoro Rodriguez Blanco v. Pamela Bondi, and that has been submitted on the briefs, along with the case of Samuel Antonio Hernandez Lopez v. Pamela Bondi. That also has been submitted on the briefs. So the next case for oral argument today is Walter Rosales v. Roman Catholic Bishop of San Diego, Condon Johnson Associates. Parties can please come forward. Also, v. Patrick Webb and Webb & Carey, APC. Good morning, Your Honors. Patrick Webb appearing on behalf of the 11 plaintiffs, myself, and the firm. The trial court's order denying remand, dismissing the case, and ordering sanctions should be reversed for three reasons. First, the trial court did not have original jurisdiction after the first amended complaint and then we proffered the second amended complaint. There was no federal original jurisdiction, neither a federal question, nor diversity. Second, the JIV is not a necessary, required, or indispensable party to any of the three claims that the plaintiffs are making. Since there was nothing that was going to be taken away from the JIV, the JIV was not going to be required to do anything, a damage award in favor of the plaintiffs against either of the defendants would have had nothing to do with the JIV and therefore it could not be an indispensable party as a matter of law. And finally, of course, the sanctions need to be reversed because the first amended complaint and the proffered second amended complaint meet the reasonable attorney standard of care under Rule 11 and 28 U.S.C. 1927. There's nothing frivolous, nothing futile, and nothing in bad faith about the desecration claims, the conversion claims, and the breach of fiduciary duty and fraudulent conveyance claims. Wasn't the first amended complaint filed too late after removal? We do not believe so, Your Honor. We think the record is quite clear about that, that we had the right to file it because the return that notifies the state court that there's been a removal had not yet been filed and so we had an automatic right to file in state court. Then to make sure that the first amended complaint was considered by the federal court system, we put a copy of it into the file. You put a copy of it into the file, but you didn't do anything other than that and if the premise of my colleague's question is correct, which I believe it is, that the first amended complaint had no legal basis because the case had already been removed, then if you're wrong and if the first amended complaint was void because the case had already been removed, what significance does attaching it to as an exhibit have? It's not just attaching it, Your Honor. We filed it and the filing of it was to give notice to the federal court that it had been filed we thought timely in state court, but even if it hadn't been filed timely in state court, we still were within the 20 day time period to file a first amended complaint. But you didn't file it as an amended complaint. Did you tell the court that's what you were doing? We certainly did by the time of the motions for remand, Your Honor. We explained that we put the federal court on notice and that we were filing it as a 15A right to automatically amend. How long after the removal did that notice come? Oh, within days, Your Honor, as I recall. I don't have the specific date in front of me here. Make sure I understand your argument on this whole amended complaint. It's your view and your argument that by attaching the amended complaint that you filed in state court, that that was sufficient for the federal court? Yes, it's titled, Your Honor, a first amended complaint. Whether it has the caption of the state court or the federal court, it was still filed in the federal court. It would take effect under Rule 15A because we were within the time period to automatically amend the complaint that had been removed. Which court did it say in the pleading description, did it say in the United States District Court or did it still say Superior Court for the County of San Diego? We used the form from the state court and put a further caption on top of it with a federal district court caption. So it was an attachment to a document filed under the caption of the federal court. What authority do you have that we need to wait for a return or something other than usually we say that removal is effective upon the notice? It's effective upon the notice once the notice is given back to the state court that tells the state court we've taken the case. And thus we have a window of time in which to file the first amended complaint in state court, which we used, and then to make sure that we got it considered by the federal court, we used the 15A process and made sure that a copy of it was given to the federal court. Mr. Webber, would you concede then that the May 10th complaint raises that the tribe would be a necessary party to that suit and that it raises at least a substantial federal question for purposes of federal jurisdiction? No, Your Honor, because you have to look backwards. You have to look to the May of 23 hearings where we were seeking Rule 59, Rule 60 amendments or modifications to the judgment. And we had by that time had the opportunity again under the other part of 15A to propose a proffered second amended complaint that made it very clear that after all of the nine months had gone by when there was no remand and there was no consideration of the emergency nature of the desecration claims that we were making, the desecration had occurred by that time, we were no longer seeking any injunctive relief. So by the time that the May 1st amended complaint is being considered, a second amended complaint had been proffered and we believe had been wrongfully denied by the trial court. Trial court's reason for denying was to claim under its chamber. But to come back to Judge Johnstone's question as I understood it, that if we were looking solely at the May 10th complaint, which has many, many paragraphs talking about injunctive relief, et cetera, void actions, actions that needed to be temporarily and permanently enjoined. You're saying that we should just disregard those. First, yes, Your Honor, you disregard them because we proffered a second amended complaint that shows the plaintiffs can make a claim without seeking any injunctive relief. Secondly, injunctive relief wouldn't have been available at that point in time when the court was making the decision whether to consider the second amended complaint or not because the desecration had occurred. How could you get an injunction to prevent something that's already happened? Well, but you were, the May 10th complaint sought, do you agree? Injunctive relief. I'm sorry, Your Honor, it sought? Did in fact the May 10th complaint seek injunctive relief? Only injunctive relief as to Condon Johnson, the people doing the drilling of the soil. Okay, but so the answer to that question is yes. Correct. Okay, all right. And it sought injunctive relief within 100 feet of the cemetery. Is that correct? Not correct, Your Honor. Okay, tell me how that's not correct. We took that out. Well, no, in the May 10th complaint, you're saying that wasn't in the May 10th complaint? I'm just looking at the May 10th complaint right now. I understand you have a lot of arguments on why we shouldn't, but let's just say the May 10th, the original May 10th complaint is what we're looking at. In my review, it looked like it sought injunctive relief within 100 feet of the cemetery property. And I'm trying to figure out if that is what we're looking at, what is your best argument that there's no federal jurisdiction? The argument there, Your Honor, is we amended that complaint to take that out. That was an inadvertent leftover from prior litigation, and it did not need to be, and we specifically removed it, which we have every right to do under the chief of your Ninth Circuit decisions that say it's not in bad faith to amend out all federal claims. That sounds like a concession then, that if you were seeking injunctive relief, that would present a substantial federal question that would invoke federal jurisdiction. It was simply that that cured it. You're not making any argument today that your client's claim for injunctive relief against the construction company wouldn't have invoked the gun factors and provided the court. I think it's that clear, Your Honor. It's the other way around. It's at the point at which the trial judge has to decide whether to remand or not. He can't hang on to the case if there's no original jurisdiction in whatever amended complaints in front of him at that time. I was just checking the dates. The first amended complaint gets filed on May 17th, I believe. 17th or 18th. The point being, by the time the judge has to make the remand decision, he has no original jurisdiction. The 100-foot buffer argument is gone. So, in our mind, there was no seeking of injunctive relief that would have triggered his ability not to remand. Well, why didn't you move to amend in federal court then, within the time provided for automatic amendment? We believe we did, Your Honor. We believe we did it particularly in the second amended complaint. Well, the second amended complaint was outside of the time for automatic amendment, wasn't it? I'm sorry. I thought you were asking, did we ask for leave? We did ask for leave under 15, 59, and 60 by the time we sought the reconsideration of his denial of the motion to remand. Right, but you're not arguing today that the district court abused its discretion to deny leave to amend. You're arguing that you actually had this other complaint. I'm asking you why, I guess, tell me when it was clear to you that the injunctive relief was futile. When was your first opportunity to amend that complaint now that it was in federal court with just damages claims? Within a day of filing the original complaint that they attempted to remove. But you filed that complaint in state court and attached it and then filed it with federal court. Why didn't you file an amended complaint in federal court as a federal amended complaint? We believe what we did was effective to do that, Your Honor. And what made you think that was okay? Because Rule 15a says we have an automatic right to file. Do you normally just practice in state court or do you practice in federal court as well? I mean, both sides of the street, Your Honor. I practice on both sides. You might want to reserve time and I want to ask you about the sanctions. The district court observed over, I guess, it's been the past two decades that you've bought countless cases that are highly similar to this one. And the vast majority of those have failed because the village is a necessary party and cannot be joint. So I wanted to give you an opportunity, given the history here, what's your best argument that the district court erred when it imposed sanctions? None of those cases had anything to do with the desecration involved in this case, perpetrated by the bishop and perpetrated by the Condon Johnson entity. None of those cases involved desecration on parcel 06, which is the cemetery parcel. It is not held in trust. Any of the five cases that were referenced in the trial court's order all involved trust land. This case does not involve trust land. And we learned from all of the experiences we'd had over the years in the other cases that if we sought any relief that was touching trust land, an argument could be made that the JIV might be an indispensable party to that. So we made sure that in this case, the cemetery would not be considered that. We checked the records. We went back to the original transfer to the church of the cemetery property, and it stayed in the hands of the church, we believe, under the Fraudulent Conveyance Act throughout this entire time period. But it certainly stayed that way until 2017 when the bishop tried to transfer it, we think, impermissibly to the tribe. But whether the transfer is permissible or not, we seek no relief that would take that away. The JIV got whatever it got in that deed. Our position is that the conveyance was fraudulent under Civil Code 3439 and, most importantly, California common law. There's been 90 years where you do not have to sue the transferee or grantee of the property to have the claim. And therefore, none of those prior cases involved any of that kind of transaction. This is in a completely unique situation. And none of those cases were decided on the merits, and they are not identical because they do not involve the same parties or the same claims. Our desecration claims in this case didn't even arise until 2023. So none of those older cases that go back, as you say, 10 or 15 years have any relevance to what was happening in this case. It was a point where the trial judge, and there's a telling comment. I believe he made it in the transcript of the hearing at 7 ER 1453. He says, I can't see the plaintiffs making their case without taking something away from JIV. That's the whole point. And just as Justice Alito said the other day in the hearings on birthright citizenship, sometimes trial judges in the federal courts make mistakes. This was his mistake. He did not understand under California's common law, fraudulent transfer law, and under civil code 3439.04 et sec, that you do not have to sue the JIV even though they got the property. We only are seeking damages at this point in time. The damages are against the party that did the transfer and the party that did the drilling of the soil nails with the permission of the party that still has to be considered to be the owner of the property so that we can collect damages from the owner, Bishop and Condon Johnson, who did the drilling. That's why none of those older cases are controlling. They're certainly not issue preclusives. Thank you. You have 10 seconds on the clock left. I'll give you a minute. I'll reserve a minute, Your Honor. I'm giving you a minute. You didn't reserve a minute. Thank you, Your Honor. Good morning, and may it please the court. Kendra Hall on behalf of Appellee Condon Johnson and Associates, Inc. I'm also joined by an attorney from my law firm, Rachel Whitehawk. Where to start? I think, just big picture for me, the context of this case is the Hamul Indian Village Project, which is occurring in connection with the Class III Federal Indian Gaming Regulatory Casino. It's on Indian land. Why don't we start there then, but maybe a little more specific. Under the gun factors, under the May 10th complaint, and I may ask you if the First Amendment complaint governs whether that changes anything, but I'm struggling a little bit to find where you articulate specifically what the substantial federal question is. There's some kind of hand-waving about the importance of tribal sovereignty and that this would have an impact, and certainly this is against a backdrop of a campaign to try to slow or halt the construction of a casino, but there's nothing specific here, and I don't think you cite to us any case that says under the gun factors, a seeking injunctive relief to, for lack of a better term, abate a nuisance that's occurring on tribal land but affecting people who are off of tribal land is itself a substantial federal question that would deprive the state courts of jurisdiction. The last part of your question I think assumes that the claims are not affecting the reservation, the federal trust lands, and I would just mention that as of December of this year, the cemetery itself is now a federal trust land, and so I think that they worked very hard to draw this strong line, but their complaints don't do that. Well, I guess I'm asking you to draw the strong line because there are cases in which lawsuits, even if the tribe were joined, could proceed in state court. So I'm trying to figure out what the necessary, I mean, you cite nothing in the compact. There's no specifics here other than citations generally to IGRA and references to tribal land of what exactly the substantial federal question is. Why would a state court necessarily have to apply an important question under the gun test to decide these claims? I think, well, I think you're correct, Your Honor, that we are making general arguments based upon the Indian land, the federal trust lands, and that is the federal courts have the interest in the tribal sovereign immunity, and the compact, once adopted, is federal law. In what way would the injunction force the village to violate the compact? Do you have a specific chapter and verse for how that conflicts with it? Well, so the operative complaint and even the first minute complaint are seeking injunction, seeking removal of the soil nails. Does the compact discuss soil nails? The compact discusses the tribal EIR, and that discusses the soil nails, so I believe it's all tied together in terms of attacking this project and attacking the things that have been approved under federal law, the compact. Okay, and so that would necessarily conflict with what has been reviewed and maybe approved under the tribal EIR? Yes, exactly. And I mean, I assume you're also, but correct me if I'm wrong, relying on the very, what strike me as very lengthy and broad injunction allegations in paragraph 62 of the May 10th complaint, which goes on at great length as to all of the things, at least in the May 10th complaint, are seeking temporary, preliminary, and permanent injunctions as to, and that there is a list of things in there.  Yes, Your Honor. In addition, if you look at, because I know, and I certainly don't concede the first minute complaint has any basis to be here, but I just would comment that at paragraph 62 of the first minute complaint, all they did is remove the language regarding extending 100 feet beyond the symmetry and replace it with this very nebulous language requiring the immediate cessation of grading and barring the developer and construction activities within the immediate vicinity of the remains. What does that mean? We're talking about the reservation is in the immediate vicinity of the remains. And so I think it's, you know, this case has been a moving target in terms of the allegations. Well, I guess just on the damages claim, what I'm trying to figure out is, again, point me to a case if I'm clear. I see the argument from the TEIR, but are you asking us to adopt a rule that, again, frame this very generally, that if parties off of a reservation are seeking to, say, abate a nuisance that's occurring on tribal land and simply seek damages, you're not asking us to adopt a rule that broadly. This is tied specifically to the approval of this particular construction project under a IGRA compact approved casino. That's correct, Your Honor. Okay. And that would be true even if they're just seeking damages against non-tribal parties? Well, but they're not. But so you'd want me to hypothetical case where they're suing my client, the subcontractor for the tribe, and they're saying you have desecrated, excuse me, I thought they've taken care to take the, to what extent do you understand have they named, they haven't named the tribe. Correct. So where am I wrong that, that there are, are there any tribal members on the other side of the, of the V here? I mean, have they named some? They're suing, they're suing the diocese. Correct. And they're suing your client. And my client is the subcontractor, correct, for. And are they, they're, they're not the tribe. They're not imbued with tribal sovereign immunity. They're not, are they owned, are they a tribal enterprise? Not, I don't know that that's in the record. Right. So I'm just trying to, so that's the situation, right? I don't think it's a hypothetical. Like, I think the framing of this case is, according to the plaintiffs, this is to abate a nuisance by off-tribal land parties, conducted by non-tribal parties on tribal land. Right. So can they get damages? I mean, that's the, I guess that's the question. Ignoring all the procedural issues. And we're going to jump to the second amended complaint that was attached in a reply declaration to a motion. Oh, believe me, I'm not ignoring the procedural issues, but I'm asking you to look beyond them. I want to, I'm going to get there.  So, okay. The second amended complaint, paragraph 60 indicates that they are entitled to a declaration requiring reburial and unimpeded visitation of the cemetery, which is owned by the tribe. And that means they want to direct, you know, the artifacts that are, and I should mention, not just claim to be theirs. Our tribe have their ancestors buried there as well. Paragraph 20, the basis for the suit against my claim is we failed to prevent anyone from desecrating remains, meaning the tribe which owns the project and the land. So there, even the second amended complaint, in my view, is bringing the tribe in. Do you agree with the order of operations that I guess we're suggesting by this argument that I think implies that the district court might've taken things out of order by doing supplemental jurisdiction before the gun factors? In other words, as I read the district court's order, it's primarily exercising supplemental jurisdiction. That brings in, we have this new Royal Cannon case. And then as a matter of comity is addressing those other factors, would you concede that maybe the proper order of operations is to apply the gun factors first to determine whether there's a substantial federal question for jurisdiction and then assess whether to keep the supplemental state claims? So I think I would disagree with your suggestion of the order. Okay, yeah, let me know what the right way to do this is. So the plaintiffs conceded original jurisdiction on the May complaint. They conceded it. If you read the hearing transcript in the seventh volume of the excerpts of the record- Well, you can't concede jurisdiction. It's either there or it's not. So the district court explained and said, I did not include as much in my order regarding why there was federal questions because the plaintiffs conceded it addressing why the court should look at the first amendment complaint. So we started at that. The court also then addressed the fact, the federal injunction statute as it believed it had original jurisdiction based on that in that order. And so I think for it to, then when it talked about supplemental jurisdiction, it said there's many, many other reasons why federal jurisdiction is being claimed to exist here. I'm not addressing those. I'm just going to tell you that and then address the reason, address supplemental jurisdiction and the futility finding. So it didn't necessarily not address original jurisdiction. It just found that this is just another frivolous case that's been filed by the plaintiffs and felt that that resolved the issue pretty firmly. Does that answer your question? I feel like I went over. Yeah, I guess it's, I think that to read into the background, I'm trying to find where it is in the order on review, where we would find the district court addressing it in that order. But that backdrop is helpful. Okay, yeah. And I think, you know, the court felt a little taken back by the fact that there is this shift in all of a sudden in the reconsideration format. There's claims you never had any original jurisdiction whatsoever. And as we pointed out in our brief, the district court's findings on the reconsideration, whether or not the 59E had been satisfied, is nowhere addressed in the brief on appeal here. And so I don't even know how we get to these questions, how we get to the evidence, particularly the second amended complaint, which was filed late. And the court found not only to be untimely, but that the reconsideration portion of that lacked merit. And I'm sorry, I don't know if you addressed this in answering Johnstone's questions, but just assume that the plaintiffs successfully amended their complaint and removed their request for injunctive relief, the one that's, you know, within 100 feet of the cemetery property. Is there, what's your best argument that there's still a basis for federal jurisdiction or would we have to remand to the state court? So my client is sued for installing the soil nails and that complaint, the first amended pleading, still asks for us to remove those affecting the project, which is under the EIR and the compact. And I think I did make the point that just removing the 100 feet and replacing with language that says, you know, barring construction activities within the immediate vicinity of the remains, I think creates a basis to find that the federal trust lands, the tribal lands are being affected and the project are being affected. So it's not just limited to the cemetery itself and there is no construction occurring on the cemetery. Paragraph 65 says they're still entitled to declaratory injunctive relief going forward, dumping, grading. And so it still goes through all the things involving the construction project. So, but you're just saying because it's federal land that raises a federal question? Well, I think in this case, federal trust land, I think that I'm unaware of what state authority could tell the tribe what to do on a federal trust land and an Indian reservation. But it is, I mean, is that, so if they take out the 100 feet, you're saying that still involves federal trust land beyond that? Well, because their pleading says they're asking for beyond the cemetery. You're saying, if I understand you correctly, that even if we were looking at this document, it doesn't say, we can read it for what it says, but that it doesn't say what your friend said it said? That's correct, Your Honor. And I think that's another reason why the second admitted complaint was filed to yet again, try and re-imagine these pleadings that were not before the district court when it ruled. Ms. Hall, I'm conscious of the time, but something is puzzling me a little bit in terms of trying to sort out these jurisdictional issues. Why doesn't this suit, based on your explanation of the interests here, fall into tribal court under the second Montana exception? If you've got tribal members looking to, if it's affecting the tribe's interests, the way you cast the tribe's interests here suggests looks a lot like an argument. Well, they're also trying to unwind, even in the first Dominican prayer three, the deed and the property interests of the tribe. Absolutely. So I'm just wondering over this long history, where are the tribal courts in this? Yeah, that issue hasn't been raised before. Well, we won't count it now in the last 30 seconds of your argument. I'll be happy to offer a supplemental brief on that issue, Your Honor. And I see my time is up. I would be happy to address the issues on the sanctions. I think there were three bases and multiple grounds that the district court went through. Thank you. Thank you very much.  Thank you for a minute to respond, Your Honor. I think Judge Johnstone has it correct. The analysis that the trial court did was backwards. It was out of order. And therefore, it is an abuse of discretion to be exercising supplemental jurisdiction because you go to the last hearing on remand, not the first hearing. What was the status of the pleadings at the last hearing? There was no injunction being sought. No injunction could be sought under the first amended complaint, and no injunction is being sought under the second amended complaint, which we clearly asked for leave to file under Rule 15, 59, and 60 by the time of the motions for reconsideration. So Judge Johnstone has hit the nail on the head. He's also asked an important question. If only seeking damages, how is the JIV affected? And I hear something from Ms. Hall suggesting that the tribe had some interest in the artifacts of our clients. The tribe has no interest whatsoever. They waived that interest because they made no objection under California law at the time of the disposition. And we gave the California Supreme Court case in Christensen, Ninth Circuit case, White against University of California, the Newman against Safia Vagles-Warren, Ninth Circuit case, and most importantly, the Jim Thorpe case from Middle District, Pennsylvania, finding that a tribe has no interest in the remains or the artifacts of the individuals where the lineal descendants are still alive as they are in our case. Thank you. Appreciate your oral presentation. Thank you both, Mr. Webb and Ms. Hall for your oral argument presentations here today. The case of Walter Rosales versus Roman Catholic Bishop of San Diego and Condon Johnson Associates versus Patrick Webb and Webb and Carey APC is now submitted.
judges: MURGUIA, BENNETT, JOHNSTONE